## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DONELL NETTLES, # 54568-037   *

           *

Plaintiff,        *

           *

v            *   Civil Action No.  ELH-13-2875

           *

MEDICAL DEPARTMENT,   *

           *

Defendant.       *

          ***

### MEMORANDUM

   Donnell Nettles, a federal prisoner, filed a complaint, as supplemented, against the "Medical Department" at Chesapeake Detention Facility ("CDF") (ECF 1, 10), pursuant to 42 U.S.C § 1983.  He also filed a motion to proceed in forma pauperis (ECF 11).  Nettles' financial affidavit shows he is indigent.  Therefore, his motion to proceed in forma pauperis will be granted.

   Wexford Health Sources, Inc. ("Wexford")[1] has filed a motion to dismiss or, in the alternative, a motion for summary judgment, with exhibits.  (ECF 17).  Although Nettles was notified of his right to respond, Nettles has not done so.[2]  The issues are ready for disposition and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).

---

  [1]  Recognizing its obligation to liberally construe the filings of pro se litigants such as Nettles, the court directed the Clerk to attempt to effect service on Wexford Health Sources, Inc., the contractual medical provider for the Chesapeake Detention Facility" ("CDF") since July 1, 2012.  (ECF 17, pp. 5-6).  Prior to that date, Wexford served as the state utilization review manager for prison health matters. *Id.*  Counsel for Wexford has accepted service of process by mail, and Wexford will be substituted as defendant by separate order.

  [2] Notice of defendant's dispositive motion and the opportunity to file affidavits and records in reply was sent to Nettles pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  (ECF 18).

## BACKGROUND

Nettles is confined at FCI Petersburg in Virginia.  He claims that, during the time he was held at the CDF in Baltimore, defendant violated his civil rights by providing inadequate medical care.  Specifically, he alleges he was prescribed Doxycycline to treat an outbreak of folliculitis on his scalp, and that the drug caused him to develop dark spots on his forehead.  Nettles states the patient medication information sheet he was provided did not explain the possibility of this side effect.  (ECF 1 at 1).  Nettles seeks an unspecified sum of compensatory and punitive damages.

## FACTUAL SUMMARY

Wexford has submitted verified copies of Nettles' medical records and the affidavit of Michael Lawrence, M.D.  The records show that on May 12, 2012, Nettles submitted a sick call slip indicating that he has a history of folliculitis vulgaris.  (Ex. 2 at 5).[3]  That condition is described by Wexford as "the presence of inflammatory cells within the wall and ostia of the hair follicle, creating a follicular-based pustule.  Acne represents a noninfectious form of folliculitis." (ECF 17, n.3) (quoting http://emedicine.medscape.com/article/1070456-overview).

On May 14, 2012, Valerie Burrell, R.N. examined Nettles for his complaints of itching. Nettles' examination revealed peeling, cracked skin with an erythemic[4] area with a short, well-defined slightly raised border, bumps that were pinkish, cracking and dry, and bilaterally situated on the head.  (Ex. 2 at 6).  Plaintiff was diagnosed with dermatitis, a general term used to

---

[3] All exhibits referenced herein were filed by defendant and are docketed at ECF 17.  For the convenience of Mr. Nettles, I will refer to the exhibits by the number assigned to them by defendant.  But, all references to page numbers in record citations are to those generated by the court's electronic case filing system.  Exhibit 1 is found at ECF 17-4.  Exhibit 2 is found at ECF 17-5.

[4] *See* ECF 17, n.4 (quoting http://medical-dictionary.the freedictionary.com/er).

describe inflammation of the skin[5]; he was prescribed hydrocortisone cream 1%; and he was referred for further evaluation. *Id.*

Susann Galloway, P.A. examined Nettles on May 18, 2012, and observed diffuse, scaly papules on his scalp. (Ex. 2 at 9-11). He was diagnosed with seborrhea of the scalp. Nettles was provided dandruff shampoo, hydrocortisone cream, and A and D ointment. *Id.* A dermatology consultation was also requested for Nettles.

On September 19, 2012, Nettles requested more A and D ointment, hydrocortisone, and dandruff shampoo. On October 10, 2012, Nettles requested "additional treatment" for his scalp. In response, he was seen on October 10, 2012, by Paul Braswell, R.N. and given more Selsun Blue shampoo. (Ex. 1 at 15-17).

Nettles submitted sick call slips on January 14, and 28, 2013, asking to see a doctor about his scalp because the shampoo and ointment were not working. (Ex. 2 at 18-20). On February 3, 2013, Sandra Nwugo, R.N. examined Nettles for complaints of itching.[6] The medical record of the visit indicates that examination showed "whiteheads, blackheads, or non-inflamed papules, peeling, cracking of the skin, white scales, scaling areas, scalp lesions." (Ex. 2 at 20). She gave Nettles more A & D ointment and told him to follow-up with a sick call slip for the dermatology consultation requested in May of 2012. (Ex. 2 at 20-21).

On February 7, 2013, Nettles submitted a slip call slip to see a dermatologist. (Ex. 2 at 22). On February 9, 2013, he was examined by Agnes Oluyemi, R.N., who observed a rash on Nettle's entire head and no evidence of infection. She referred Nettles to a physician assistant

---

[5] *See* ECF 17, n.5 (quoting http://medical-dictionary.the freedictionary.com/dermatitis).

[6] Portions of the record from that visit are illegible. (Ex. 2 at 20).

for treatment.  (Ex. 2 at 23).  On February 19, 2013, Nettles submitted a sick call request to see a doctor.  (Ex. 2 at 24).

On March 1, 2013, Michael Lawrence, M.D. examined Nettles for his rash.  Nettles stated that the rash erupted two years earlier, after he shaved his head, and it grew worse when he let his hair grow.  He described small bumps and itching, but no pain, discharge, or fever. Nettles indicated he had tried several shampoos without relief, and an oral medication had helped.  Nettles could not remember the name of the oral medication.   (Ex. 2 at 25).

Dr. Lawrence observed papules, comedone, and erythema without discharge.  (Ex. 1, ¶ 6).  He diagnosed folliculitis of the scalp.  *Id.*  Dr. Lawrence recommended that Nettles stop shaving his head, and he prescribed Doxycycline once a day for 10 days.  *Id.*  He also placed Nettles on the chronic care list to be seen in two weeks.  *Id.*  Nettles never reported any side effects from the Doxycline, such as skin discoloration.  *Id.* at ¶ 9.  The medical chart requests a search for Nettles old medical record.  (Ex. 2 at 25).

On March 20, 2013, Nettles submitted a sick call slip for medical follow-up and for a possible refill of the Doxycycline.  He wrote: "I was suppose[d] to see the doctor on 3-20-2013 for a follow up and a possible refill on the present medication (Doxcycline)."  (Ex. 2 at 27).

In his affidavit, Dr. Lawrence states in part:

> 6.     …Doxycycline is a tetracycline family antibiotic that is appropriate to treat skin acne and also serve as a prophylaxis against infection.  As with most drugs, Doxycycline does have the potential for undesirable effects.  Whenever prescribing medication to patients it is my practice to discuss the potential for side effects with the patient, and to stress the need to report any unusual effects with health providers.  Plaintiff was placed on the chronic care list for General Medicine to be seen in two weeks.
>
> ****************
>
> 8.     To Affiant's knowledge, Plaintiff's complaints regarding a "darkening" of his skin pigmentation have not been observed or confirmed by a physician.

Darkening of the skin is an atypical reaction and is not conclusively related to taking Doxycycline.  A more common side effect is that the skin become photosensitive and is prone to sunburn. Discoloration due to photosensitivity commonly reverts over time.  There is no clinical evidence to determine whether Plaintiff's alleged discoloration, if any, is permanent or temporary.

9.      To Affiant's knowledge and belief, Plaintiff did not inform medical staff at CDF that he was experiencing a possible side effect having dark spots on his scalp from taking Doxycycline.  Had he done so, Plaintiff's medication dosage could have been adjusted or the medication stopped, or changed to another medication, to mitigate or reverse the alleged side effect.

10.     In Affiant's opinion to a reasonable degree of medical probability, Plaintiff received appropriate medical care for his condition, and the use of Doxycycline was an appropriate medication choice to treat Plaintiff's condition.

## STANDARD OF REVIEW

Defendants' motions are captioned as motions to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed.R.Civ.P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an

obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998).[7]

As noted, Nettles was informed of his right to respond to the motion and to submit affidavits, declarations, and other documentary evidence in support.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise

---

[7] In contrast, a court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.    Fed.R.Civ.P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).  Plaintiff has not filed an affidavit under Rule 56(d).

I am satisfied that it is appropriate to address the motion as one for summary judgment, as it will facilitate resolution of this case.  I turn to the standards governing summary judgment.

Summary judgment is governed by Fed.R.Civ.P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.,* 475 U.S. 574, 586 (1986).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

 "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club*, *Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed.R.Civ.P. 56(e)).   However, the court must "view the evidence in the light most favorable to .... the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89 94 (2007). Nevertheless, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp*., 477 U.S. at 323–24).

## DISCUSSION

Plaintiff filed suit pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707 (1999).   To state a claim under § 1983, a plaintiff must allege that 1) a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988).

As interpreted by the Supreme Court, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003).  In the context of denial of medical care, an Eighth Amendment violation arises when the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Id*.

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F. 3d 164, 166 (4th Cir. 1998).  Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge requirement is not met. *Id*. at 169 (reasoning that actions inconsistent with an effort to hide a serious medical condition refute

the presence of subjective knowledge).  Mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference.  *See Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975) (concluding that, where a prisoner was under constant medical supervision, his claims did not rise to the level of deliberate indifference).

Because Wexford is a contractual medical provider for the state, the deliberate indifference standard applies to Wexford and its employees.  *West v. Atkins*, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law").  In order to succeed on a § 1983 claim, however, plaintiff must show that "the official[s] charged acted personally in the deprivation of the plaintiffs' rights.  The doctrine of respondeat superior has no application under [§ 1983]."  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  Thus, "a private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights."  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original).  Nettles neither alleges nor presents any evidence that his constitutional rights were violated due to Wexford policy or custom.  Accordingly, defendant is entitled to summary judgment as a matter of law.

Further, even if Nettles had named the appropriate parties, there is no genuine dispute as to any material issue of fact.  First, Nettles has not demonstrated that his scalp condition, although itchy and uncomfortable, amounted to a "serious" medical need.  By his own account, Nettles had suffered with the condition for two years.  His undisputed medical records show the rash was not infected and was limited to his scalp.  Assuming, arguendo, the condition amounted to a serious medical need, Nettles has not demonstrated that Wexford, or its staff, acted with requisite deliberate indifference to deny him necessary medical care for his condition.  Nettles

was examined and treated for his condition by various medical providers with ointments, shampoo, and an antibiotic.   Notably, at no time did Nettles bring his concerns about skin discoloration to the attention of medical providers.   In sum, Nettles does not show constitutionally inadequate medical care. [8]

## CONCLUSION

For the above reasons, the court will grant defendant's motion for summary judgment. Judgment will be entered in favor of defendant and against plaintiff by separate Order.

July 29, 2014                                                            _____/s/_____
Date                                                                    Ellen Lipton Hollander
                                                                        United States District Judge

---

[8] This ruling is without prejudice to any rights plaintiff may have to pursue claims of medical malpractice in state court.  Under Maryland law, a claim of medical malpractice may proceed only after a review before the Maryland Health Claims Arbitration Board.  *See* Md.Code, Cts & Jud. Proc., § 3–2A–01 *et seq., see also Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007).